Filed 11/9/23  P. v. Pickens CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B320704 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. ZM066139) |
| v. | |
| B. PICKENS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Harrison and Terrance T. Lewis, Judges.  Reversed and remanded with directions.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

B. Pickens[1] appeals from the trial court's April 27, 2022 order committing her to the Department of State Hospitals following its February 18 finding she was not competent to stand trial. Pickens contends on appeal the trial court erred in committing her to a state hospital for treatment because she had been released on her own recognizance nine months earlier and was not in pretrial custody at the time of issuance of the commitment order.

During the pendency of this appeal, the superior court granted Pickens pretrial diversion, finding she was suitable for mental health diversion under Penal Code section 1001.36.[2] We therefore can no longer grant Pickens effective relief regardless of the validity of the prior commitment order. Even if the superior court in the future terminates diversion and reinstates criminal proceedings, the court would need at that time to make a determination of Pickens's mental competence, and, if Pickens is found not to be competent, the court would need to make a new finding as to the appropriate placement for treatment. Because dismissing Pickens's appeal as moot would have the effect of affirming the commitment order (without addressing the merits), we reverse the order and remand to the superior court to vacate the order as moot.

---

[1]    Although the appellate briefing refers to Pickens by her full name, we identify her as B. Pickens to protect her privacy. (See Cal. Rules of Court, rule 8.90(b)(3).)

[2]    Further statutory references are to the Penal Code.

2

## BACKGROUND AND PROCEDURAL HISTORY

A.    *The Complaint*

The felony complaint filed on May 18, 2021 charged Pickens with assault with a deadly weapon (§ 245, subd. (a)(1); count 1), felony vandalism (§ 594, subd. (a); count 2); and misdemeanor battery (§ 242; count 3).  Pickens was held to answer on the charges (§ 872, subd. (a)) and was released on her own recognizance.

According to an April 26, 2022 report from the California Department of State Hospitals Conditional Release Program (CONREP), Pickens had been involved in a two-year dating relationship that ended with the prior boyfriend obtaining a restraining order against Pickens.  With respect to the assault with a deadly weapon charge, on May 16, 2021 Pickens went to the home of her ex-boyfriend, where (according to the ex-boyfriend), Pickens "produced a six-inch, curved, orange metal pipe from her handbag and began to 'erratically swing the metal pipe across her body' approximately 25 times, striking him approximately 10 times on the face, arms, and back, causing a laceration on his forehead and a contusion on his forearm."

B.    *The Competency Proceedings*

On October 4, 2021 defense counsel declared a doubt as to Pickens's competence to stand trial.  The superior court suspended criminal proceedings under section 1368, subdivision (a), and transferred the case to the mental health division of the superior court.  The court appointed two doctors to evaluate Pickens's mental competence, and both opined Pickens

3

was not competent to stand trial. Pickens remained out of custody on her own recognizance.

On February 18, 2022 the superior court admitted the doctors' reports and found Pickens was not mentally competent to stand trial.[3] The court ordered that the criminal proceedings remain suspended. The court further ordered that CONREP evaluate Pickens and recommend an appropriate placement.

CONREP's April 26, 2022 report recommended placement of Pickens in the Department of State Hospitals. The report stated a doctor from CONREP evaluated Pickens by videoconference and reviewed available documents. The report concluded Pickens had a "chaotic history of instability and delusional ideation . . . coupled with continuous disregard for psychiatric treatment." The report concluded Pickens remained "under an impenetrable delusional framework, highlighting her need for a higher level of care and placement on psychotropic medications to allow for a reality-based approach to her case and needed competency restoration treatment." The report added that Pickens was "unsuitable for outpatient treatment at Gateways CONREP" and required a safe and secure setting for competency restoration. CONREP recommended Pickens "receive competency training in a locked forensic setting approved by the Department of State Hospitals" to restore her to competency. (Boldface and underlining omitted.) The report noted that Pickens denied she had a mental illness or took psychotropic medications.

---

[3] Judge Terrance T. Lewis handled the proceedings in the mental health court through the April 27, 2022 issuance of the commitment order.

4

Based on the CONREP report, on April 27, 2022 the superior court ordered Pickens committed to the Department of Mental Health for placement at the Department of State Hospitals, with a maximum commitment date of April 27, 2024. Further, the court ordered the Department of State Hospitals to admit Pickens no later than May 25, 2022. Pending placement, the court ordered Pickens to remain on her own recognizance. Pickens timely appealed the commitment order.[4]

C.    *Post-commitment Events*

A July 27, 2022 minute order notes Pickens was number 768 on the statewide waiting list for placement in the Department of State Hospitals. Pickens remained out of custody on her own recognizance.

On January 11, 2023 the superior court[5] granted Pickens diversion under section 1001.36, subd. (b), finding she was eligible and suitable for mental health diversion. The court ordered Pickens to comply with the treatment plan and take all medication prescribed by a doctor.[6]

---

[4]    Pickens's notice of appeal stated she was appealing a March 29, 2022 order. In light of Pickens's opening brief, we construe her appeal as taken from the April 27, 2022 commitment order.

[5]    Judge Robert S. Harrison.

[6]    We granted Pickens's December 7, 2022 motion to augment the record with the July 27, 2022 minute order. We deemed Pickens's March 21, 2023 motion to augment the record with the January 11, 2023 order a motion for judicial notice, which we also granted.

# DISCUSSION

A.    *Governing Law*

     1.    *Mental competence to stand trial*

"The due process guarantees of both the federal and state Constitutions forbid the trial of a criminal defendant while he or she is mentally incompetent." (*People v. Buenrostro* (2018) 6 Cal.5th 367, 385; accord, *People v. Mickel* (2016) 2 Cal.5th 181, 194-196; see § 1367, subd. (a) ["A person shall not be tried or adjudged to punishment . . . while that person is mentally incompetent."].)  Section 1367, subdivision (a), provides that a "defendant is mentally incompetent . . . if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

After the trial court has declared a doubt as to a defendant's mental competency, section 1369, subdivision (a)(1), requires "[t]he court [to] appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant."  Section 1369 provides for a trial by the court or a jury of the question of mental competence.  If the defendant is found not mentally competent to stand trial, the trial proceedings "shall be suspended until the person becomes mentally competent."  (§ 1370, subd. (a)(1)(B).)  Section 1370, subdivision (a)(1)(B)(i), provides that the court shall order the mentally incompetent defendant to a State Department of State Hospitals facility, a public or private treatment facility, including a community-based residential treatment program, or placed on outpatient status pursuant to section 1600.  Further, prior to making this determination, the

court must order the community program director or a designee (here, CONREP) to evaluate the defendant and prepare a written recommendation as to the appropriate placement for treatment. (§ 1370, subd. (a)(2)(A)(i).)

Section 1601, subdivision (a), provides, "When a person charged with and found incompetent on a charge of, convicted of, or found not guilty by reason of insanity of [listed violent felonies] *or any felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person*, outpatient status under this title shall not be available until that person has actually been confined in a state hospital or other treatment facility for 180 days or more after having been committed under the provisions of law specified in Section 1600, unless the court finds a suitable placement, including, but not limited to, an outpatient placement program, that would provide the person with more appropriate mental health treatment and the court finds that the placement would not pose a danger to the health or safety of others, including, but not limited to, the safety of the victim and the victim's family."  (Italics added.)

### 2. *Mental health diversion*

"Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders."  (*People v. Frahs* (2020) 9 Cal.5th 618, 626; accord, *People v. Braden* (2023) 14 Cal.5th 791, 813.)  "'Pretrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (f)(1).)  Pretrial diversion may be granted to a

mentally incompetent defendant.  (§ 1370, subd. (a)(1)(B)(iv) & (v).)

Under section 1001.36, as amended effective January 1, 2023, if a defendant is charged with a qualifying offense,[7] he or she is eligible for pretrial diversion if two criteria are met: (1) he or she has been diagnosed with a qualifying mental disorder, and (2) the disorder was a significant factor in the commission of the charged offense.  (§ 1001.36, subd. (b)(1) & (2).)  The statute further provides that a defendant is suitable for diversion if (1) in the opinion of a qualified mental health expert, the defendant's symptoms would respond to mental health treatment; (2) the defendant consents to diversion and waives his or her speedy trial right (unless a defendant cannot consent or provide a waiver because of his or her mental incompetence); (3) the defendant agrees to comply with treatment (unless a mentally incompetent defendant is unable to agree to comply with treatment); and (4) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community.  (§ 1001.36, subd. (c)(1)-(4).)

If the above criteria are met, and the "court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant," the court may order pretrial diversion and refer the defendant to inpatient or outpatient mental health resources for up to two years.  (§ 1001.36, subd. (f)(1)(A) & (C)(i).)  "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion,

_____

[7]     A defendant may not be placed into a diversion program for murder, manslaughter or certain enumerated sex offenses. (§ 1001.36, subd. (d).)

the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.*, subd. (h).)

If, however, the defendant commits an additional misdemeanor or felony, engages in specified criminal conduct, or otherwise performs unsatisfactorily in the diversion program, the trial court may reinstate the criminal proceedings. (§ 1001.36, subd. (g)(1)-(4).) If the trial court terminates diversion and reinstates criminal proceedings, "the court shall, pursuant to Section 1369, appoint a psychiatrist, licensed psychologist, or any other expert the court may deem appropriate, to determine the defendant's competence to stand trial." (§ 1370, subd. (a)(1)(B)(v).)

B. *Pickens's Appeal Is Moot*

"A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'" (*In re D.P.* (2023) 14 Cal.5th 266, 276.) "A case becomes moot when events "'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant [the plaintiff] any effect[ive] relief.'" [Citation.] For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Id.* at p. 276.)

In her supplemental brief, Pickens contends her appeal has not become moot because if we dismiss the appeal, the commitment order will be "effectively hanging over appellant

9

while she remains on diversion and by statute, subject to potential termination of diversion status." We agree with the People that Pickens's appeal is moot because we cannot provide her any effective relief.

On appeal, Pickens contends the April 26, 2022 CONREP evaluation recommending Pickens be committed to the state hospital for treatment did not provide a sufficient basis for its conclusion Pickens needed to be confined for treatment instead of outpatient treatment. Pickens cites from the report, challenging its findings that Pickens had exhibited "'concerning beliefs and threatening behaviors,'" refused to live at the CONREP facility during treatment, and would not be willing to take medication if prescribed. Pickens argues there was no "justifiable basis to require confinement as a condition of receiving competency treatment," and further, the order of confinement violated her constitutional right to be free from pretrial custody. Even if we were to agree with Pickens that CONREP's April 2022 report did not support confinement, we could not provide her effective relief because the report will not be the basis of any future confinement if the trial court later terminates her diversion.

As discussed, if the trial court terminates diversion and reinstates criminal proceedings, the court is required to appoint a medical expert to determine whether Pickens is competent to stand trial. (§ 1370, subd. (a)(1)(B)(v).) This determination will be made based on conditions present at the time of termination of diversion. And if Pickens is again found not competent to stand trial, the court will be required to obtain a new CONREP report to evaluate Pickens and recommend an appropriate placement for treatment, whether inpatient or outpatient. (§ 1370, subd. (a)(2)(A)(i).) Moreover, section 1370,

10

subdivision (a)(2)(A)(ii), provides, effective July 1, 2023, that "a defendant shall first be considered for placement in an outpatient treatment program, a community treatment program, or a diversion program, if any such program is available, unless a court, based upon the recommendation of the community program director or their designee, finds that either the clinical needs of the defendant or the risk to community safety, warrant placement in a State Department of State Hospitals facility."

Accordingly, contrary to Pickens's contention, she does not have the April 27, 2022 commitment order hanging over her head. Any future commitment will need to be based on a new order finding her not competent to stand trial and a subsequent CONREP report recommending inpatient placement for treatment. And CONREP's April 2022 report will not be the basis for any future determination as to treatment. Because we cannot grant Pickens any effective relief, her appeal is moot. (*In re D.P., supra*, 14 Cal.5th at p. 276.)

However, Pickens argues that it would be unfair to dismiss her appeal as moot because it would serve as an affirmance of the underlying commitment order. (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 [because dismissal of an appeal "'is in effect an affirmance of the judgment or order appealed from,'" in some circumstances the appropriate remedy is to reverse the judgment instead of dismissing the appeal]; *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 945, 947 [directing superior court to dismiss underlying action to avoid affirmance that would legitimize moot project].) Because our dismissal would constitute an affirmance of the commitment order, which we have not addressed on the merits, we reverse the

11

order with directions for the trial court to vacate the order as moot.

## DISPOSITION

We reverse the commitment order and remand for the superior court to vacate the order as moot.


FEUER, J.

We concur:


PERLUSS, P. J.


MARTINEZ, J.

12